United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IASMINE ABDENNABI,
Plaintiff,
v.
STEVE GORDON,
Defendant.

Case No. 26-cv-12497-RS

**ORDER GRANTING TEMPORARY RESTRAINING ORDER**

## I. INTRODUCTION

Plaintiff filed this lawsuit seeking declaratory and injunctive relief against enforcement of California laws that would allow the DMV to recall or deny her personalized license plate, claiming those laws are unconstitutional both facially and as applied. On October 29, she moved for a temporary restraining order (TRO) to enjoin the state from physically seizing her license plates pending a hearing on a preliminary injunction. For the reasons below, Plaintiff's motion is granted.

## II. BACKGROUND

Plaintiff Iasmine Abdennabi applied for a personalized license plate via the California Department of Motor Vehicles (DMV) website on December 15, 2023. California allows applicants to receive license plates with personalized text, which it labels "environmental license plates," so long as they meet the conditions set forth in the California Vehicle Code § 5105 and the regulation interpreting that statute, which is found under Title 13 of the California Code of

Regulations, § 206.02. The particular arrangement of alphanumeric characters Ms. Abdennadi requested was "RVRTSEA," which she says she intended to express a message of "support for equal civil and political rights for all persons living between the Jordan River and the Mediterranean Sea." The DMV approved the application and issued the requested environmental plates to Ms. Abdennadi on May 22, 2024.

The California DMV received three complaints about Plaintiff's license plate, which broadly interpreted the plate as referring to the phrase, "From the River to the Sea," and took issue with that message. One anonymous complaint expressed horror that "California issued vehicle license plate RVRTSEA affixed to a vehicle driving our local streets," and added that the "vehicle owner even affixed a Free Palestine bumper sticker below the license plate." Dkt. 11, at 3.[1] Another complainant "described feeling angry, upset, and offended." *Id.* at 4. A third said he felt "fear, anxiety, and a clear sense of being targeted." *Id.* As such, the DMV ordered the recall and surrender of the plates on October 23, 2025, 15 months after the plates were initially issued.

Ms. Abdennadi timely appealed that order on November 3, 2025, and received a hearing before an administrative law judge (ALJ) at the California Office of Administrative Hearings on May 13, 2026. At the hearing, Christian Milhoan, the DMV's Manager of the Special Plates and Customer Support Section, testified that he reviewed the plates in light of the Vehicle Code and relevant provisions of the California Code of Regulations. Milhoan explained that it revoked Plaintiff's plates "[b]ased on the connotation of violence or genocide." Dkt. 10, at 8. Ultimately, the ALJ found that the DMV had authority to recall plates carrying "connotations offensive to good taste and decency" under Cal. Veh. Code § 5105, and further found that the plates violated § 206.02(c)(4)(D) because the plates "connote and/or refer to 'genocide[] or creates a risk of inciting violence.'" Dkt. 10, at 11-12. Defendant Gordon, in his capacity as the Director of the California DMV, adopted the ALJ's proposed decision in its entirety and ordered recall of the plates,

[1] For purposes of this motion, the court takes judicial notice of the documents submitted at Dkt. 11, which counsel represents are official correspondence from the DMV served on Ms. Abdennabi.

effective September 16, 2026. Dkt. 10, at 14.

Plaintiff filed the complaint in this action on October 26, 2026, seeking declaratory, injunctive, and nominal monetary relief under the First and Fourteenth Amendments to the U.S. Constitution. On October 29, she submitted the instant motion for a TRO, enjoining Gordon and the DMV from recalling or denying her environmental plates. The same day, Defendant was directed to submit a response no later than 12 PM on October 30, 2026.

## III. LEGAL STANDARD

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). A "TRO 'should be restricted to… preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no longer." *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. Of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

The standard for issuing a TRO is substantially identical to the standard for issuing a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1559 n.3 (9th Cir. 2017). A party seeking a temporary restraining order must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "When the government is a party, these last two factors merge." *Drakes Bay Oyster Co v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied. *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotations and citations omitted).

## IV. DISCUSSION

For the reasons set out in more detail below, Plaintiff is entitled to a TRO preventing

California from recalling her environmental plates. She has shown a strong likelihood of success on the merits and irreparable harm. The other two *Winter* factors—which merge in this suit against the government—also weigh in her favor. Issuing this TRO serves the purpose of "preserving the status quo" until a preliminary injunction hearing.

A. Likelihood of Success on the Merits

Plaintiff is likely to succeed on the merits of her claims that Cal. Veh. Code § 5105 and California Code of Regulations § 206.02(c)(4)(D) are unconstitutional, both facially and as applied to her.

*1. Private or Government Speech*

To start, the alphanumeric characters on her personalized license plate are most likely private speech. *Ogilvie v. Gordon*, No. 20-cv-01707-JST, 2020 WL 10963944, at *3-5 (N.D. Cal. July 8, 2020). The Supreme Court determined in *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 207 (2015) that customized, specialty plate designs submitted to the Texas DMV constituted government speech. In reaching that holding, the Court relied on the factors identified in *Pleasant Grove City v. Summum*, 555 U.S. 460, 470-473 (2009). As the Court explained in Walker, the test asks: (1) whether the forum at issue is one the government has historically used "to communicate[] messages from the States"; (2) whether the speech at issue is "often closely identified in the public mind with the [State]"; and (3) the degree to which the state maintain[ed] direct control over the messages conveyed" via that forum.

In *Walker*, the relevant forum was the specialty design of the plate as a whole; the Court explicitly did not consider the program to personalize the text of license plates. *Id.* at 204. ("Here we are concerned only with the second category of plates, namely specialty license plates, not with the personalization program."). Courts subsequently examining the status of alphanumeric characters on license plates have reached varying conclusions. *Ogilvie*, 2020 WL 10963944, at *3 (collecting cases). The District Court's analysis in *Ogilvie* walked through the *Summum* factors and concluded that alphanumeric characters are private, not government speech. The court reaffirmed that conclusion, based on the same analysis, with the benefit of a full evidentiary record

in granting the plaintiff summary judgment. *Ogilvie v. Gordon*, 540 F. Supp. 3d 920, 926 (N.D. Cal. Nov. 24, 2020). That conclusion is persuasive authority here, supporting the conclusion that the standards for regulations of private speech govern the rest of the merits analysis.

On the first prong, Plaintiff is likely to show that California "has not historically used the alphanumeric combinations on license plates to communicate messages to the public." *Ogilvie*, 2020 WL 10963944, at *3. *Walker* itself acknowledged that the portion of license plates historically conveying government speech has been limited to those parts *other than* "state names and vehicle identification numbers." *Walker*, 576 U.S. at 210-11.

On the second prong, Plaintiff is likely to show that the alphanumeric characters have not historically been "often closely identified in the public mind" with California. As the court explained in *Ogilvie*, it is very unlikely that someone would infer that a license plate reading "KNG KOBE" reflects the government's view that Kobe Bryant is "the king of basketball, or of California, or of something else." *Id.* Likewise, it is unlikely one would see a vanity plate reading "MY COAST" as an endorsement that the vehicle owner also owns the California coastline. As another district court held, the sheer variety of personalized plates argues against finding that their contents are government speech, comparing it to the Supreme Court's decision finding that registered trademarks are not government speech. *Kotler v. Webb*, No. 19-2682-GW-Skx, 2019 WL 4635168, at *8 (C.D. Cal. Aug. 29, 2019); *cf. Matal v. Tam*, 582 U.S. 218, 236 (2017) ("If the federal registration of a trademark makes the mark government speech, the Federal Government is babbling prodigiously and incoherently. It is saying many unseemly things.").

On the third prong, the Supreme Court has effectively rejected the argument that "regulatory control of private speech helps transform that speech into government speech." *Tam*, 582 U.S. at 235. ("If private speech could be passed off as government speech by simply affixing a government seal of approval, government could silence or muffle the expression of disfavored viewpoints."). The situation in *Summum* is distinguishable because there, the Court dealt with a finite physical space that could only fit so many statues; the city government's curation effectively allowed it to control the "message" of the space and convey a specific image. *Summum*, 555 U.S.

at 472. No such control is possible over the relatively infinite scope of personalized license plates in California.

*2. Viewpoint Discrimination*

Although the alphanumeric speech on the license plates is likely private speech, the fact remains that license plates are most likely non-public fora, as many courts examining the issue have concluded. *See e.g., Ogilvie*, 540 F. Supp. 3d at 927 (collecting cases). Although the government has greater leeway to regulate speech in such a forum, that discretion is not unlimited; such regulations must be "reasonable in light of the purpose served by the forum and … viewpoint neutral." *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 806 (1985).

Here, the underlying statute is most likely unconstitutional because it discriminates based on viewpoint. As the Supreme Court held in *Tam*, "[g]iving offense is a viewpoint." *Tam*, 582 U.S. at 243. Such an idea is not new. Indeed, "if there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397 (1989). As such, a statute permitting the government to restrict speech on personalized plates if its content is "offensive to good taste and decency" is very unlikely to pass muster under the First Amendment.

The specific regulation purporting to cabin the government's discretion in applying that statute fares little better. As relevant here, § 206.02(c)(4)(D) requires the government to refuse any personalized plate that "contains fighting words, or refers to illegal or violent acts, including, but not limited to criminal gang affiliation or activity, weapons, genocide, or creates a risk of inciting violence." Plaintiff explains that this ban is viewpoint based, assuming *arguendo* that RVRTSEA conveys a pro-genocide message (which Plaintiff actively refutes, to be clear).

On its face, this regulation appears to bar three separate things: fighting words, incitement, and speech referring to violence of various types. One of those things is not like the others. Fighting words and incitement are long-recognized categories of low-value speech that do not merit First Amendment protection. *See e.g., Chaplinsky v. State of New Hampshire*, 315 U.S. 568

United States District Court
Northern District of California

(1942) (fighting words), *Brandenburg v. Ohio*, 395 U.S. 444 (1969) (incitement). By contrast, speech merely "referring to" violence seems more akin to the language of offense, which the Supreme Court explicitly identified as protected First Amendment expression in *Tam*. Such a reading is especially plausible because the canon of surplusage indicates that this must be a third category, rather than merely another way of saying fighting words or incitement.

As such, Plaintiff is likely to succeed on her claims that the statute and regulation at issue are facially unconstitutional because they discriminate among private speech based on viewpoint. At this stage, the analysis need not reach Plaintiff's alternative arguments based on vagueness, overbreadth, and unbridled discretion, because viewpoint discrimination is sufficient to show a likelihood of success on the merits.

B. Irreparable Harm and Laches

Plaintiff is also likely to show sufficient risk of irreparable harm to merit temporary equitable relief. As Plaintiff urges, "a colorable First Amendment claim" may be enough "to establish irreparable injury sufficient to merit the grant of relief." *Warsoldier v. Woodford*, 418 F.3d 989, 1001 (9th Cir. 2005). Such relief is necessary because, when it comes to sharing expressive speech, "the ephemeral opportunity to present one's paper to an interested audience is lost and the next day's opportunity is different." *Jacobsen v. U.S. Postal Service*, 812 F.2d 1151, 1154 (9th Cir. 1987). As explained above, Plaintiff has demonstrated at least such a colorable claim here, suggesting relief is warranted.

In response, the government focuses primarily on the Plaintiff's delay in bringing her lawsuit and this TRO motion. This argument comes in two flavors: one focusing on the lack of irreparable harm, and another highlighting the equitable defense of laches. The government anchors its arguments on the fact that Plaintiff waited ten weeks after the DMV's final adjudication of her appeal before taking legal action—the final decision was delivered on August 17, 2026, and she filed this lawsuit on October 26, 2026. Plaintiff does not and cannot contest this fact, based on the judicially noticed records the government sent her. Dkt. 11.

However, delay alone does not bar equitable relief. With regard to irreparable harm, the

government argues that any delay by Plaintiff serves to indicate that the harm is not truly imminent, suggesting "emergency relief is unnecessary." Dkt. 17, at 3. However, this contention simply does not comport with the actual facts of this case. As both parties acknowledge, the DMV's order indicates it has cancelled her license plate, rendering it "subject to … physical seizure … at any time." *Id.* at 2. The fact that the state has not yet seized Ms. Abdennabi's plates does not mean it could not do so tomorrow, or at any point between now and the hearing on a preliminary injunction. To be sure, other courts within the Ninth Circuit have found that delays *may* be sufficient grounds to deny a TRO. However, the totality of the *Winter* factors here suggest a TRO is warranted, despite the delay. Defendant points to no binding authority indicating a court lacks discretion to issue a TRO in such a case.

Separately, the government argues that the doctrine of laches bars relief where (1) a plaintiff unreasonably delays seeking equitable relief and (2) that delay unfairly prejudices the defendant. *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1226 (9th Cir. 2012). However, Defendant's arguments are unpersuasive as to both prongs.

First, the government argues that the delay here was unreasonable because of the length of the delay and the fact that Plaintiff did not explain the reason for waiting. However, as the Ninth Circuit explained in *Evergreen Safety Council*, not all delays are created equal. 697 F.3d at 1226-27. Although Plaintiff has not explained the reason for delay, it is not unusual for an individual plaintiff bringing a civil rights lawsuit to face exactly the delays the Ninth Circuit held in *Evergreen* are permissible: delays as "required by an exhaustion of remedies through an administrative process," time used "to evaluate and prepare a complicated claim," or time used "to determine whether the scope of proposed infringement will justify the cost of litigation." *Id.* (quoting *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 954 (9th Cir. 2001)). On the other hand, "delay is impermissible when its purpose or effect is to capitalize on the value of the alleged infringer's labor by determining whether the infringing conduct will be profitable." *Id.*

The facts here are, at minimum, closer to the former sort of case. There is no allegation that Ms. Abdennabi could have profited from delay or waited for some tactical advantage. Instead, one

can only conclude that it took her some time to file a lawsuit and request a TRO. The cases to which the government points highlight that ten weeks is not an "unreasonable" delay for the purpose of laches. *See Evergreen*, 697 F.3d 1221 (a ten year delay), *Arizona Libertarian Party v. Reagan*, 189 F. Supp. 3d 920, 924 (D. Ariz. 2016) (eight months), *Mintz v. Chiumento*, 724 F. Supp. 3d 40, 50 (N.D.N.Y. 2024) (364 days). Judged on that scale, ten weeks is far from an unreasonable delay, even if Ms. Abdennabi could have been more prompt in filing her complaint and TRO motion.

As for unfair prejudice, the government points to its inability to brief the varied and weighty constitutional issues at play here fully. While it is doubtless true that such short notice is insufficient for thorough preparations, the government overstates the impact of being unable to brief these arguments. The relief here is inherently temporary, serving only to preserve the status quo until such time as the court can adjudicate a motion for a preliminary injunction. While Plaintiff must show a likelihood of success on the merits to show a TRO may be warranted, the Defendant can—as the government has tried to do here—prevent the issuance of a TRO by knocking out any of the *Winter* factors, such as irreparable harm. To be sure, the government deserves the chance to brief its views on the merits of this case, and it will get that opportunity. However, there is little prejudice to the government in ordering it to stay its hand on enforcement of the order in question for such a temporary period. The court will adjudicate the likelihood of the merits again at the hearing for a preliminary injunction and will assess the merits more fully during the litigation to follow, giving the government time to present its arguments. Any prejudice is further limited by the fact that Plaintiff seeks for now only to enjoin the recall or denial of her plates, not enforcement of the Vehicle Code or regulations as to other individuals.

C. Balance of Equities and Public Interest

Finally, Plaintiff is persuasive in arguing that the balance of equities favors issuing a TRO. There is no plausible safety risk from allowing her to keep the plates; she had them for some 29 months without incident, beyond those individuals who took offense and complained to the DMV about the content of her speech. The public shares the Plaintiff's interest in enforcing

United States District Court
Northern District of California

constitutional rights and enjoining the government from violating them, particularly in cases implicating the First Amendment. *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014). Moreover, the relief granted here is only temporary, and it serves primarily to maintain the status quo until such time as the parties can fully brief motions regarding a preliminary injunction. Finally, as explained above, the temporary relief here is personal in scope, and does not bar the state at this juncture[2] from enforcing these laws against other individuals.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion for a TRO is granted. Defendant Gordon, in his official capacity, together with his officers, employees, agents, successors, and persons acting in concert with him, are enjoined from recalling or denying Plaintiff's license plates reading RVRTSEA until the preliminary injunction hearing, which is now set for November 18, 2026 at 1:30 PM. Plaintiff shall submit an opening brief in support of a motion for a preliminary injunction no later than November 6, 2026. Defendant shall submit any opposition no later than November 13, 2026.

**IT IS SO ORDERED**.

Dated: October 30, 2026

RICHARD SEEBORG
United States District Judge

[2] The Plaintiff also argued that California is barred from relitigating the constitutionality of this statute and regulation based on nonmutual collateral estoppel, citing the district court's adjudication of the same issues in *Ogilvie*. Dkt. 11, at 6. It is unnecessary to adjudicate this argument for purposes of this motion. However, the parties should present arguments on this point at the hearing on a preliminary injunction.